THE PEOPLE ex rel. EDWARD WOJCIK, Plaintiff-Appellee, v. THE VILLAGE OF HARWOOD HEIGHTS et al., Defendants-Appellants.

(No. 58418;

First District (5th Division)—January 31, 1974.

Ancel, Glink, Diamond and Murphy, of Chicago (Louis Ancel and Stewart H. Diamond, of counsel), for appellants.

Richard F. McPartlin, of Chicago, for appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

A mandamus action was filed by the People of the State of Illinois on the relation of Edward Wojcik seeking relator's reinstatement to the position of Chief of Police of the Village of Harwood Heights, Illinois, and for the salary differential between the rank of Lieutenant of Police and the rank of Chief of Police from the date of relator's removal from the latter rank. The trial court upon the petition, answer and a stipulation of facts granted the writ and gave judgment for relator's costs.

Defendants appeal contending that the mayor of a municipality, subject to the Fire and Police Commissioner Act, may, in accordance with a municipal ordinance, summarily remove a chief of police without the filing of charges and the granting of a hearing, as provided for by Ill. Rev. Stat. 1969, ch. 24, par. 10—2.1—17.

In the year 1960 the Village of Harwood Heights became subject to the provisions of article X, division 2.1, of the Illinois Municipal Code (Ill. Rev. Stat. 1971, ch. 24, par. 10—2.1—1 et seq.), commonly referred to as the "Fire and Police Commissioners Act," and has been subject to the provisions of said Act at all times since.

On April 9, 1970, Mayor Majeske, with the approval of the Village Board of Trustees, appointed relator for an indefinite term to the rank of Chief of Police from his prior rank of Lieutenant of Police.

Ordinance No. 1314, "AN ORDINANCE ESTABLISHING A POLICE DEPARTMENT," was passed and approved by the President and Board of Trustees of the Village of Harwood Heights on April 6, 1971. Sections 6.003 and 6.005 of that ordinance provide as follows:

> "Ordinance 1314 sec. 6.003
>
> OFFICE OF CHIEF CREATED. There is hereby created the office of police chief. The chief shall be appointed by the president by and with the advice and consent of the board of trustees; provided, that if the person appointed chief was at the time of such promotion a member of the department he shall retain his status and rank while serving as chief and shall revert to such status and rank when his term as chief has ended."
>
> "Ordinance 1314 sec. 6.005
>
> DISCHARGES. No certified policeman shall be discharged

from the department except after a hearing on charges before the board of fire and police commissioners as provided by law; provided, that this shall not be construed as affecting the power of the president and board of trustees to appoint and remove the chief of police."

On March 7, 1972, Mayor Majeske, with the approval of four of the six trustees of the Village, appointed one Ronald Rentner as "Acting Chief of Police of the Village of Harwood Heights," with an expiration date of April 30, 1972. Subsequent to this appointment the relator was returned to his rank of Lieutenant of Police in the police department. On May 2, 1972, Mayor Majeske appointed Ronald Rentner to the position of Chief of Police, which appointment was unanimously approved.

It was stipulated that the relator was separated from his rank as Chief of Police without the filing of charges and without being given an opportunity to be heard in his own defense under the provisions of Ill. Rev. Stat. 1969, ch. 24, par. 10—2.1—17. On March 7, 1972, and April 11, 1972, relator made a demand upon defendants for a hearing before the Board of Fire and Police Commissioners, for reinstatement, and for payment of lost salary, which demands were denied.

OPINION

Defendants contend that under the proviso found in Ill. Rev. Stat. 1969, ch. 24, par. 10—2.1—4* they have the authority to provide by ordinance for the appointment of the Chief of Police by means other than through the Board of Fire and Police Commissioners. They further argue that the power to discharge is included in the power to appoint, and that the requirements of Ill. Rev. Stat. 969, ch. 24, par. 10—2.1—17** are thus not applicable to the Chief of Police. Defendants rely mainly on *People ex rel. Borzewski v. Rayniak,* 19 Ill.App.2d 417, 154 N.E.2d 312, to support their argument.

---

* Par. 10—2.1—4 provides in pertinent part:

"The board of fire and police commissioners shall appoint all officers and members of the fire and police departments of the municipality, including the chief of police and the chief of the fire department, unless the council or board of trustees shall by ordinance as to them otherwise provide; except that in any municipality which adopts or has adopted this Division 2.1 and also adopts or has adopted Article 5 of this Code, the chief of police and the chief of the fire department shall be appointed by the municipal manager, if it is provided by ordinance in such municipality that such chiefs, or either of them, shall not be appointed by the board of fire and police commissioners."

** Par. 10—2.1—17 provides in pertinent part:

"Except as hereinafter provided, no officers or member of the fire or police department of any municipality subject to this Division 2.1 shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense."

Relator, on the other hand, argues that the proviso applies solely to appointment and that the provisions of Ill. Rev. Stat. 1969, ch. 24, par. 10—2.1—17 are controlling as to the discharge of relator. Relator relies on the recent Illinois Supreme Court decision of *Bovinette v. City of Mascoutah,* 55 Ill.2d 129, 302 N.E.2d 313, and *Edwards v. City of Marion,* 130 Ill.App.2d 895, 266 N.E.2d 491.

■■ It is our opinion that *Bovinette* controls the case at bar. In that case the plaintiff, Bovinette, contended that his employment as chief of police of the city of Mascoutah had been wrongfully terminated because no charges were ever filed against him with the Board of Fire and Police Commissioners, and that no hearing was ever held. The defendant city answered that it was operating under the managerial form of municipal government as provided in article 5 of the Illinois Municipal Code (Ill. Rev. Stat. 1969, ch. 24, par. 5—1—1 *et seq.*) and that pursuant to paragraph 5—3—7 the city manager had the right to appoint and dismiss employees and officers of the city.

The court in response to defendant's argument held that "[t]here is no language in division 2.1 of article 10 which can be construed as exempting from its provisions those municipalities operating under the managerial form of municipal government." The court thus finding no exception if the municipality was operating under a managerial form of government then went on to decide the applicability of paragraphs 10—2.1—17 to chiefs of police with a fact situation almost identical to the instant cause.

The court in its opinion quoted paragraph 10—2.1—4 and then went on to explain:

"Thus in all municipalities operating under Division 2.1 all members of the fire and police departments, including the chiefs, must be appointed by the Board of Fire and Police Commissioners. However, as to the chiefs, the municipality may provide that they be appointed by someone other than the Board of Fire and Police Commissioners, but if that municipality is one that has adopted article 5, which provides for the managerial form of municipal government, then if an ordinance is adopted providing that the Board of Fire and Police Commissioners shall not appoint the chiefs, that appointment must be made by the municipal manager. *We must note, however, that this exception relates solely to the appointment of the chiefs and does not refer to their discharge."* (Emphasis supplied.)

The defendant in *Bovinette* had passed an ordinance substantially similar to section 6.003. The court referred to this ordinance and its relation to defendant's removal of plaintiff by stating:

482

"In section 10—2.1—17, which provides for the discharge of members and officers of the fire and police departments, we find no authority which authorizes the city, by ordinance, to remove this power from the Board of Fire and Police Commissioners and grant it to some other officer or body. Thus, under section 10—2.1—4 the city council, by ordinance, may remove the power to appoint these officers from the Board of Fire and Police Commissioners and confer it on the municipal manager. But there is no corresponding authority contained in section 10—2.1—17 with regard to discharging these officers. *Therefore the removal of the chief of police and the chief of the fire department in municipalities subject to division 2.1 of article 10 is vested solely in the Board of Fire and Police Commissioners as provided in section 10—2.1—17*, although that municipality may also have adopted the managerial form of municipal government as provided in article 5." (Emphasis supplied.)

Defendants in the instant cause could not remove relator without complying with paragraph 10—2.1—17. Since it was stipulated that no charges were filed nor was any hearing held, relator was wrongfully removed from the rank of Chief of Police.

The judgment is affirmed.

Affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.